**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MOHAMED MAHMOUD ABDEL-KHALIK, | ) | |
| Petitioner, | ) | |
| v. | ) | No. 2:26-cv-03058-TLP-cgc |
| CHRISTOPHER BULLOCK, | ) | |
| Respondent. | ) | |

**ORDER GRANTING PETITON FOR WRIT OF HABEAS CORPUS**

Petitioner Mohamad Mahmoud Abdel-Khalik, a noncitizen detained by Immigrations and Customs Enforcement ("ICE"), petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) The Court ordered Respondent to show cause why the Writ should not be granted. (ECF No. 6.) Respondent responded and Petitioner replied. (ECF Nos. 9, 10.) For the reasons below, the Court **GRANTS** the Petition and **ORDERS** Petitioner's immediate release.

**BACKGROUND**

Petitioner is a Palestinian[1] national who entered the United States as a B2 visitor from the United Arab Emirates in 1988. (ECF No. 9-1 at PageID 60.) Petitioner has lived in the United States ever since. (*Id.*) Petitioner was granted Lawful Permanent Resident ("LPR") status in 1997 but was convicted of passport fraud in 2005. (*Id.*) In 2007, an immigration judge ordered Petitioner removed from the United States. (ECF No. 9-2 at PageID 63.) Immigration and

[1] Respondent mistakenly states that Petitioner is a citizen of the United Arab Emirates. (ECF No. 9 at PageID 51.) Although Petitioner was born in that country, his birth certificate lists him as a Palestinian national. (*See* ECF No. 1-3 at PageID 24.)

Customs Enforcement ("ICE") then placed him on an Order of Supervision ("OSUP") "pending [his] removal from the United States." (ECF No. 1-5 at PageID 28.) After placing him on an OSUP, ICE gave Petitioner a list of conditions that he needed to follow and notified him that his failure to follow any of the conditions "may result in a fine, more restrictive release conditions, return to detention, criminal prosecution, and/or revocation of [his] employment authorization document." (ECF No. 1-6 at PageID 31–32.) One of those conditions was that he "not commit any crimes or be associated with any criminal activity while on [the OSUP]." (ECF No. 1-6 at PageID 31.) ICE also gave Petitioner a Release Notification, which stated that he would be given "an opportunity to prepare for an orderly departure" once Petitioner secured his travel documents. (ECF No. 1-5 at PageID 28.) Petitioner remained on an order of supervision for nearly twenty years until ICE took him into custody in August 2026.

On August 13, 2026, ICE detained Petitioner after he showed up for his required check-in at the agency's Nashville office. (ECF No. 1 at PageID 6; ECF No. 9 at PageID 51.) Petitioner claims that he "was informed that he was being taken into custody by ICE for an unspecified violation of the Order of Supervision." (ECF No. 1 at PageID 6.) Petitioner also asserts that he did not violate "the terms of his Order of Supervision" and that ICE provided no information "at his check-in that any particular violation had occurred." (*Id.* at PageID 4.)

But Respondents attached Petitioner's Notice of Revocation of Release as an exhibit to the response. (ECF No. 9-3 at PageID 64.) The form states that Petitioner's OSUP is revoked under 8 C.F.R. § 241.4(l) for violating the conditions of his release. (*Id.*) In particular, the form lists Petitioner's "arrest and conviction after placement on OSUP for assault, violation of probation, theft, false reports and trespass" as the violations. (*Id.*) At the status conference, Respondent's counsel explained that Petitioner's most recent convictions were from 2013 for

theft and false reports. Paul Gray, the Assistant Field Office Director, signed the Notice of Revocation. (*Id.* at PageID 65.)

ICE has detained Petitioner since August 13. Petitioner filed his Petition while ICE detained him at the West Tennessee Detention Facility in Mason, Tennessee. (ECF No. 10 at PageID 70.) ICE then moved Petitioner to the River Correctional Center in Ferriday Louisiana where the agency is now detaining him. (*Id.* at PageID 71.)

Petitioner alleges that ICE did not follow its own regulations in deciding to revoke Petitioner's supervision. Petitioner asserts that Mr. Gray, as Assistant Field Office Director, lacked authority to revoke Petitioner's OSUP under 8 C.F.R. § 241.4(l). (ECF No. 1 at PageID 17.) Petitioner also asserts that ICE "violated agency instructions" by not allowing him to prepare for an orderly departure included in his Release Notification. (*Id.*) Because of these violations, Petitioner urges the Court to set aside Respondent's revocation of Petitioner's OSUP under the *Accardi* doctrine and order his immediate release. (*Id.* at PageID 17–18.)[2]

Respondent does not respond to Petitioner's argument that Mr. Gray did not have the authority to revoke Petitioner's OSUP. Respondent instead argues that the Court should deny the Petition because Petitioner failed to exhaust his administrative remedies. (ECF No. 9 at PageID 52–53.) Respondent also argues that Petitioner's detention is presumptively reasonable under 8 U.S.C. § 1231 because Petitioner has been detained for less than six months, and that ICE properly revoked Petitioner's OSUP because he violated the terms of his supervision. (*Id.* at PageID 54–55.) The Court, however, finds these arguments unpersuasive.

[2] Petitioner also challenges Respondent's revocation of his OSUP on due process grounds and under the APA. (ECF No. 1 at PageID 10–17.) Because the Court finds that Respondent's revocation of Petitioner's OSUP violates the *Accardi* doctrine, and this *Accardi* violation constituted a due process violation, the Court will not address Petitioner's other arguments.

As explained below, the Court finds that Mr. Gray lacked authority to revoke Petitioner's OSUP and that this action falls under the *Accardi* doctrine. The Court also finds that Mr. Gray's revocation of Petitioner's OSUP violated due process. Petitioner is accordingly entitled to immediate release from ICE custody. And because the Court finds that Mr. Gray could not revoke Petitioner's OSUP, the Court will not address Petitioner's argument that Respondent's did not permit Petitioner to prepare for an orderly departure.

**ANALYSIS**

As a preliminary matter, the Court rejects Respondent's argument that Petitioner needs to exhaust his administrative remedies before seeking federal court intervention. Respondent argues that Petitioner can seek a bond determination from an immigration judge. (ECF No. 9 at PageID 52–53.) But this argument would be correct only if ICE was detaining Petitioner under 8 U.S.C. § 1226(a). (*Id.*) "Section 1226 provides that 'an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 (2021) (quoting 8 U.S.C. § 1226). But noncitizens who have spent significant time within the interior of the United States are entitled to a bond hearing during removal proceedings under statute. *Lopez-Campos v. Raycroft*, 175 F.4th 713, 734 (6th Cir. 2026). Respondent, however, correctly points out that ICE is detaining Petitioner under 8 U.S.C. § 1231. And noncitizens detained under § 1231 have no right to a bond hearing under federal law or regulations. *Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020). Petitioner thus has no administrative remedies to exhaust. Having addressed exhaustion, the Court turns next to the merits of the case.

Under the *Accardi* doctrine, courts may set aside an agency action that violates agency regulations "with the force and effect of law." *See United States ex rel. Accardi v. Shaughnessy*,

347 U.S. 260, 265–67 (1954). The purpose of the *Accardi* doctrine is "to prevent the arbitrariness which is inherently characteristic of an agency's violation of its own procedures." *Hollingsworth v. Balcom*, 441 F.2d 419, 422 (6th Cir. 1971). A Court can thus set aside agency action when the agency fails to follow an agency regulation. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting *Sameena, Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("Where a prescribed procedure is intended to protect the interests of a party before the agency, even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed.") And here, Respondent violated the *Accardi* doctrine by failing to comply with 8 C.F.R. § 241.4(l).

ICE has broad discretion to revoke a noncitizen's OSUP under 8 C.F.R. § 241.4(l). Under the regulation, ICE may revoke an OSUP "in the exercise of discretion" when the revoking official finds one of these conditions are met:

> (i) The purposes of release have been served;
>
> (ii) The [noncitizen] violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]; or
>
> (iv) The conduct of the [noncitizen], or any other circumstance would indicate that release would no longer be appropriate.

*Id.* § 241.4(l)(2). But this discretion is not unbounded. Not every ICE employee has the regulatory authority to revoke an OSUP. And ICE must follow certain procedures when revoking a noncitizen's OSUP. For example, upon revocation, ICE must notify the noncitizen "the reasons for revocation of his or her release." *Id.* § 241.4(l)(1). ICE also must afford the noncitizen "an informal interview promptly after his or her return to [ICE] custody to afford the

[noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."[3] *Id.*

But even more importantly here, the regulation gives only two officials the authority to revoke an OSUP: the Executive Associate Director of ICE and the District Director. *Id.* § 241.4(l)(2). If the district director exercises their discretion to revoke an OSUP, they must find that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate [Director]."[4] *Id.* ICE thus violates this regulation when an official other than these two executives revokes a noncitizen's OSUP, and many district courts

[3] Petitioner alleges that ICE did not conduct an interview under 8 C.F.R. § 241.4(l)(1). (ECF No. 10 at PageID 76.) Respondent's counsel, however, stated at the status conference that Petitioner did not receive an interview because he did not cooperate with the interview process. The Court will not resolve this factual dispute because it finds that Mr. Gray did not have the authority to revoke Petitioner's OSUP. That said, the Court has serious concerns that ICE failed to hold an informal interview and failed to follow other required procedures at the time it revoked his OSUP. For example, the informal interview form contains a section for the Deportation Officer to write down the noncitizen's "oral response regarding the reasons for revocation." (ECF No. 9-3 at PageID 66.) But here the Deportation Officer left that space blank. (*Id.*) And a Deportation Officer (possibly the same one) stamped "REFUSED TO SIGN" on Petitioner's Notice of Rights and Request for Disposition. (ECF 9-4 at PageID 67.) But the section for ICE to certify service contains only a scribbled signature and denotes that the notice was read to the Petitioner in Arabic. (*Id.*) The Officer did not fill in the spaces to print his name, the name of the interpreter, or the date and time of service. (*Id.*) And as stated above, the official who revoked Petitioner's supervision had no authority to do so. Considering that ICE supervised Petitioner for over a decade after his most recent conviction with regular encounters and no issues, the circumstances here point to ICE's fly-by-night adherence to its own procedures. The Court therefore suspects that ICE violated Petitioner's due process rights in more ways than one.

[4] 8 C.F.R. § 241.4 also lists the Executive Associate Commissioner. But 8 C.F.R. § 1.2 defines "Commissioner" as the Director of ICE. Section 241.4 refers therefore to the Executive Associate Director of ICE. Section 1.2 also defines "district director" as, "to the extent that authority has been delegated from such official: asylum office director, field operations; district director for services; field office director; service center director; or special agent in charge." § 1.2. The term also means "such other official, including an official in an acting capacity within U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, or other component of the Department of Homeland Security who is delegated the function or authority above for a particular district, region, or area." *Id.*

have found that the *Accardi* doctrine applies when the revoking official is an Assistant Field Office Director. *See, e.g.*, *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d. 137, 161–62 (W.D.N.Y. 2025); *Mbonga v. Raycraft*, 809 F. Supp. 3d 762, 766 – 67 (N.D. Ohio Nov. 7, 2025); *Hammond v. Dep't Homeland Sec.*, No. 4:25-cv-2696, 2026 WL 91465, at *4–5 (N.D. Ohio Jan. 13, 2026.); *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2841886, at *5–6 (D. Md. Oct. 7, 2025). The Court agrees with the reasoning in these cases.

Mr. Gray, an Assistant Field Director of ICE, revoked Petitioner's OSUP. (ECF No. 9-3 at PageID 65.) And nothing in the record suggests that ICE delegated the authority to Mr. Gray to take that action. Mr. Gray thus lacked the authority to revoke Petitioner's OSUP and that action constituted an *Accardi* violation. And even if ICE had delegated the authority to Mr. Gray to revoke Petitioner's OSUP, Petitioner rightly points out that revocation would still be defective because Mr. Gray never stated that Petitioner's revocation was in the public interest or that the circumstances did not reasonably permit referral to the Assistant Field Office Director.

Now that the Court has found that ICE violated its own regulations under the *Accardi* doctrine, it must determine the appropriate remedy. In making this determination, the Court agrees with the reasoning provided by Judge Chuang in the U.S. District Court for the District of Maryland:

> While it is correct that not every technical failure to comply with policies or procedures violates the Constitution, the requirement that an Executive Associate Director make the determination to revoke release – that is, to restrict a person's liberty – is not merely a housekeeping requirement. A statutory or regulatory provision affecting personal rights be made by a designated senior official is fairly deemed to be an important procedural safeguard. . . . [T]he requirement that only an ICE Executive Associate Director make a determination to revoke release in the ordinary course ensures that an individual's right to liberty is not restricted without consideration by a senior ICE official exercising more mature judgment and thus is fairly deemed to be part of a procedural framework, designed to insure the fair processing of an action affecting an individual, a violation of which can be deemed to be prejudicial and thus implicate due process.

*Santamaria Orellana*, 2025 WL 2841886, at * 5–6 (citation modified). And other federal courts have found that "failure to adhere to the requirement that an Executive Associate Director or Field Office Director make the determination to revoke release in compliance with 8 C.F.R. 241.4 violates due process and thus mandates release." *Tanashyan v. Mullin*, No. 5:26-cv-04455-SP, 2026 WL 2538250, at *5 (C.D. Cal. Aug. 27, 2026) (quoting *M.P.P.P. v. Santacruz*, No. 2:26-cv-05246-RAO, 2026 WL 1601908, at *4 (C.D. Cal. June 1, 2026) (collecting cases). The Court finds that Respondent violated Petitioner's due process rights here and that immediate release is the appropriate remedy.

## CONCLUSION

The Court therefore **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** Petitioner's immediate release from custody. The Court further **ORDERS** Respondent to confirm Petitioner's release or before the close of business on October 13, 2026.

**SO ORDERED**, this 10th day of October, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE